IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JOHN O. MILLER,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>STEVE HURD, BRADLEY NEWMAN, JIMMY PATELIS, and JOSEPH MCELROY,<br><br>　　　　　Defendants. | CV 25–44–H–DWM<br><br>ORDER |

Plaintiff John O. Miller has filed a civil rights complaint under 42 U.S.C. § 1983, related to his Montana state parole hearing. (Doc. 1.) After screening, pursuant to 28 U.S.C. § 1915A, the Complaint is dismissed.

I.　**STATEMENT OF THE CASE**

　A.　**Parties**

The plaintiff, John O. Miller, proceeding pro se, is an inmate at Montana State Prison in Deer Lodge, Montana. (Doc. 1 at 2.) Miller names as defendants Montana Parole Board members Steve Hurd, Bradley Newman, Jimmy Patelis, and Joseph McElroy. (*Id.* at 2 – 3.)

　B.　**Allegations**

Miller alleges six claims. His first claim is a Fourteenth Amendment due process claim that asserts that Defendant Steve Hurd violated Miller's rights by

1

participating in Miller's parole hearing on February 12, 2025. (Doc. 1 at 5.) Hurd had previously been subpoenaed by Miller to testify in another matter, in July of 2024. In response, Hurd filed a Declaration in federal court in that case, stating that he had recused himself from parole matters related to Miller. Five months later, Hurd participated as a member of Miller's parole board. Miller alleges that Hurd's behavior toward Miller in the hearing insulted him and "displayed his personal animosity." (Doc. 1 at 6.) Hurd voted to deny Miller parole.

Miller's second claim is also labeled breach of due process. (Doc. 1 at 6.) He alleges that Defendant Newman denied him a procedurally fair and impartial parole eligibility hearing in February 2025, because Newman, as presiding officer for the hearing, appointed Hurd, despite Hurd's prior recusal and evident personal animosity toward Miller. Miller had also subpoenaed Newman in other litigation. Newman voted to deny Miller parole. (Doc. 1 at 7.)

Miller's third claim is likewise a due process claim related to his hearing. (Doc. 1 at 7.) In August of 2024, Miller subpoenaed Defendant Patelis in other litigation. (Doc. 1 at 8.) Patelis agreed with Hurd to appoint Hurd to Miller's parole panel. Patelis voted to deny Miller parole. (Doc. 1 at 8.)

Miller's fourth claim is a First Amendment retaliation claim. (Doc. 1 at 8.) Miller alleges that Hurd retaliated against Miller for exercising his First Amendment right to petition the court for redress by subpoenaing Hurd's

2

testimony. This retaliation came in the form of changing his position on recusal, serving on Miller's parole board, and denying Miller parole. (Doc. 1 at 9.)

Miller's fifth and sixth claims are Montana state law claims, alleging that Defendants McElroy and Newman breached their duties under Mont. Code Ann. § 28-1-201 to allow Miller to view the documents in his parole board file. (Doc. 1 at 9 – 11.) He also asserts that the denial violated his Montana Constitutional right to know. Miller alleges that if he had been able to see his files, he would have been able to prepare properly for his hearing.

Miller's claims against Hurd are all supported by assertions Miller has heard through various attorneys, process servers, and acquaintances that Hurd has strong negative feelings about Miller. (Doc. 1 at 12.)

Miller seeks injunctive, declarative, and compensatory relief. (Doc. 1 at 13.)

## II.  SCREENING

### A. Standard

A complaint of an inmate proceeding against a governmental defendant must be reviewed under 28 U.S.C. § 1915A. A court is required to dismiss such a complaint before the complaint is served if it: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). "The standard for determining whether a plaintiff has failed to state a

claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Kirn*, 668 F.3d 1108, 1112 (9th Cir. 2012).

To proceed on the merits, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal is appropriate where there is no cognizable legal theory or there is an absence of sufficient facts alleged to support a cognizable legal theory. *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017). Pro se pleadings are construed liberally to "afford the petitioner the benefit of any doubt." *Watison*, 668 F.3d at 1112 (internal quotation marks omitted); *Mangiaracina v. Penzone*, 849 F.3d 1191, 1195 (9th Cir. 2017) ("We construe all facts in the light most favorable to the plaintiff, and we construe a pro se complaint liberally."); *cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). However, liberal interpretation cannot supply the essential elements of a claim that were not pled. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

**B. Analysis**

Section 1983 confers a tort remedy upon individuals "whose constitutional rights have been violated by state officials acting 'under color of' law." *Whalen v. McMullen*, 907 F.3d 1139, 1145 (9th Cir. 2018) (quoting 42 U.S.C. § 1983). "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021) (internal quotation marks omitted). Though Miller has checked the boxes on the Complaint form for "official capacity" claims against these individual defendants, employees acting in their official capacities are not persons under § 1983. *Bermudez v. Duenas*, 936 F.2d 1064, 1066 (9th Cir. 1991). The official capacity claims are dismissed.

1. Immunity

Defendants Hurd, Newman, and Patelis have absolute immunity for their actions in denying Miller parole. "[P]arole board officials are entitled to absolute immunity from suits by prisoners for actions taken when processing parole applications." *Sellars v. Procunier*, 641 F.2d 1295, 1302 (9th Cir. 1981); *see also Bermudez v. Duenas*, 936 F.2d 1064, 1066 (9th Cir.1991); *Brown v. California Dep't of Corr.*, 554 F.3d 747, 751 (9th Cir. 2009).

5

> [P]arole board officials perform functionally comparable tasks to judges when they decide to grant, deny, or revoke parole. The daily task of both judges and parole board officials is the adjudication of specific cases or controversies. Their duty is often the same: to render impartial decisions in cases and controversies that excite strong feelings because the litigant's liberty is at stake. They face the same risk of constant unfounded suits by those disappointed by the parole board's decisions.

*Sellars*, at 1303.

This immunity is not without its negative implications in specific cases, where a parole board member may make a poorly-reasoned, biased, or otherwise objectionable decision.

> To be sure, absolute immunity for parole board officials does leave the genuinely wronged prisoner without civil redress against the official whose malicious or dishonest actions deprive the prisoner of liberty. But qualifying that immunity would disserve the broader public interest.

*Id.* Nonetheless, on balance, the value of the immunity for parole boards serves a greater purpose, as "better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." *Sellars*, at 1303 (internal citation omitted). That result may seem harsh, but just as a person cannot sue a judge for ruling against him, nor can a person sue a parole board member for ruling against him. And the due process and other constitutional protections for an inmate are generally much less when it comes to parole proceedings than are afforded a defendant in a criminal proceeding.

6

2. Due Process

Miller couches his claims against these defendants, related to the Board decision, as due process claims. Due process in relation to parole, under federal law, requires no more than an opportunity to be heard and notification of the parole board's reasons for denying parole. *Bermudez v. Duenas*, 936 F.2d 1064, 1066 (9th Cir. 1991). Montana inmates who committed offenses after 1989, like Miller, have no liberty interest in parole under state law that would give rise to a due process claim outside of Miller's claims regarding the ultimate decision of his parole board. *Worden v. Montana Bd. of Pardons & Parole*, 1998 MT 168, ¶ 42. Accordingly, Miller is not entitled, under federal law, to greater process than he received, including to know what is in his file.

3. First Amendment Retaliation

Miller identifies Defendant Hurd's act of "unrecusing himself and inserting himself" into Miller's hearing panel as the act of retaliation. (Doc. 1 at 9.) Appearing on the parole panel is at the heart of the immunity Hurd enjoys. Miller cannot state a First Amendment claim against him for that act.

4. State law claims

Miller alleges that Defendants McElroy and Hurd violated his state law rights by not providing him certain documents. Miller may have a Montana statutory or constitutional claim that allows him to inspect his file; that is not

7

decided here. The Court declines to exercise its supplementary jurisdiction over Miller's state law claims, in light of the fact that it dismisses any viable federal law claim. 28 U.S.C. § 1367(c)(3).

### III. CONCLUSION

Miller's federal claims are barred by absolute immunity. The Court declines to exercise its supplemental jurisdiction over his state law claims. Thus, Miller's Complaint must be dismissed.

Accordingly, IT IS ORDERED:

1. Miller's Complaint is DISMISSED. The Clerk is directed to close this action and enter judgment.

2. The Clerk of Court shall have the docket reflect that the Court certifies appeal would not be taken in good faith.

DATED this 5th day of August 2025.

Donald W. Molloy, District Court Judge
United States District Court